UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

Civil Action No. 17-111-HRW

MARK MALTANER,                                           PLAINTIFF,

v.                   **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,           DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits on December 18, 2013, alleging disability beginning on August 10, 2009, due to "severe PTSD, severe anxiety, severe depression, severe back injury, severe brain injury" (Tr. 217).

This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge Paul Jones (hereinafter "ALJ"). At the hearing, William Kiger, a vocational expert (hereinafter "VE"), testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled. Plaintiff was 54 years old at the time he alleges he became disabled. He has a GED and has worked as a dietary aide and janitor (Tr. 218).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability through his date last insured of March 31, 2015 (Tr. 23).

The ALJ then determined, at Step 2, that Plaintiff suffers from affective disorder. anxiety disorder and alcohol abuse, which he found to be "severe" within the meaning of the Regulations (Tr. 23).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 23-24).

The ALJ further found that Plaintiff could perform his past work as a dietary aide and further determined that he has the residual functional capacity ("RFC") to perform simple, routine and repetitive work (Tr. 24-28).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 29).

Accordingly, the ALJ found Plaintiff not to be disabled at Steps 4 and 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988).

3

Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

## B. Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist, Erik Nelson, M.D. and (2) the ALJ failed to adequately consider all of Plaintiff's impairments.

## C. Analysis of Contentions on Appeal

Plaintiff's first claim of error is that the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist, Erik Nelson, M.D.

In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. See SSR 96–2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004). If the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson,* 378 F.3d at 544. When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

4

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

There is an additional procedural requirement associated with the treating physician rule; he ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5.

In November 2013, Dr. Nelson completed a medical source opinion regarding Plaintiff's functioning (Tr. 487-90). He wrote in a letter that Plaintiff was unable to work due to his mental health issues (including anxiety, depression, alcohol dependence, and learning disability) (Tr. 487). He also completed a check-box form indicating that Plaintiff had the following limitations: moderate limitations in understanding, remembering, and carrying out simple instructions; making judgments on simple work-related decisions; and responding appropriately to usual work situations; marked limitations in understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; and interacting appropriately with supervisors; and extreme limitations in interacting with the public and co-workers (Tr. 488-90).

In January 2016, Dr. Nelson completed another check-box form, this time indicating that Plaintiff had worsened, specifically that he had: moderate limitations in understanding, remembering, and carrying out simple instructions and making judgments on

simple work-related decisions; marked limitations in understanding and remembering instructions and responding appropriately to usual work situations; and extreme limitations in carrying out complex instructions, making judgments on complex work-related decisions, and interacting with the public and co-workers (Tr. 1388-90).

In his decision, the ALJ discussed Dr. Nelson's opinions, acknowledging that Dr. Nelson is a treating source, but assigned little weight to Dr. Nelson's suggestions of extreme functional limitation and total disability. First, the ALJ noted that Dr. Nelson's opinions were inconsistent with his own treatment notes, which revealed Plaintiff's subjective complaints of only mild mood and anxiety issues and, significantly, the mental status examinations conducted by Dr, Nelson yielded normal results (Tr. 27, *see, e.g.*, Tr. 285, 289-90, 292-93, 307-08, 321-22, 335-36 (treatment notes)). Further, even after an extended absence from treatment with Dr. Nelson, he noted that Plaintiff was doing okay and denied a depressed mood (but reported some anxiety and PTSD) (Tr. 27, *see* Tr. 1353 ("doing okay despite five-month gap in treatment")). These inconsistencies within Dr. Nelson's own treatment records are ample reason to discount his opinion.

Moreover, the ALJ considered the other opinion evidence, which appeared to be at odds with Dr. Nelson's statement that Plaintiff is disabled, including the February 2014 psychological evaluation performed by Mark Kroger, M.S. Dr. Kroger diagnosed depression, anxiety, substance abuse disorder, and rule out PTSD and language disorder (meaning more testing was needed to confirm these diagnoses) and opined that Plaintiff had mild, moderate, or marked limitations in various areas of work-related functioning (Tr. 1249).

6

The same month, state agency psychologist Val Bee, Psy.D., reviewed Plaintiff's medical records and opined that he may have difficulty with detailed learning but appeared able to understand and remember simple information and procedures; may exhibit problems concentrating on complex demands but was mentally capable of simple, well-structured task activity; had appropriate social interaction; was able to understand and express simple ideas; and was able to adapt to ordinary changes, recognize hazards, travel independently, and generally adjust to customary work-environment demands (but may need further support with goal setting efforts) (Tr. 97-98, 102-04). Another state agency physician, Laura Cutler, Ph.D., later agreed (Tr. 120-22).

Finally, as for Dr, Nelson's January 2013 statement that Plaintiff is unable to work, the ALJ was correct in disregarding this conclusory remark. It is within the province of the ALJ to make the legal determination of disability. The ALJ is not bound by a treating physician's conclusory statement, particularly where the ALJ determines, as he did in this case, there is medical proof that Plaintiff retains the RFC to work in some capacity. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Based upon the foregoing, the Court finds that the ALJ properly evaluated the opinions from Plaintiff's medical sources, and articulated an adequate rationale for his residual functional capacity determination.

To the extent that Plaintiff suggests that this evidence is open to another interpretation that favors his claim, the Court declines to reweigh the evidence in this fashion. If the

Commissioner's decision denying benefits is supported by substantial evidence, as it is here, the Court must affirm that decision. *Longworth v. Commissioner of Social Security*, 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff also contends that the ALF failed to consider all of his impairments, specifically encephalomalacia. While the ALJ did not find this to be a severe impairment, the ALJ explicitly acknowledged Plaintiff's history of a head injury, an MRI showing evidence of a brain injury, and neurologist Dr. Nicolas's findings that Plaintiff had language deficits and inefficient learning in assessing Plaintiff's residual functional capacity (Tr. 25-26, *see, e.g.*, Tr. 322-29, 365-69, 502-09, 516-20, 1139-46 (neurology note)). The ALJ also noted, however, that Plaintiff had a good work history and worked for 12 years after his brain injury (Tr. 26).

Moreover, the ALJ limited Plaintiff to simple, routine, repetitive work—the least mentally demanding work possible—to accommodate the effects of Plaintiff's history of a brain injury and his other mental impairments (Tr. 24).

Plaintiff's argument is that this impairment should have been considered "severe" at Step 2, is of little consequence. The ALJ found other severe mental impairments at step two, proceeded on through the sequential evaluation process, and accounted for the effects of this impairment in limiting Plaintiff to simple work. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.") As such, the Court finds no reversible error in this regard.

8

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 25th day of April, 2018.

Signed By:
*Henry R. Wilhoit, Jr.*
**United States District Judge**